Good morning. May it please the court. I'm David Rifkin, representing the appellant, Mr. Obaid. I would like to reserve four minutes for rebuttal. The government's assertion of jurisdiction and venue in this case are extraordinarily aggressive. The government brought this civil forfeiture case in California's Central District. But the property is not present in California. It was not purchased in California. The complaint does not allege that the property owner ever set foot in California or has conducted any business in California. But alleged acts that the government says gave rise to forfeiture all took place overseas, not in California. This case has nothing to do with California. Well, except for all the money that went into California to buy at that the government alleges were part of the conspiracy. Your Honor, sending the money into a jurisdiction, even if it was done at Mr. Obaid's decision, is not sufficient for minimum conduct purposes. But what's even more compelling here, it was not done at Mr. Obaid's decision. It was chosen by Palantir. But does that matter if it's just about the money and not about personal jurisdiction? Judge Rawlinson? Jurisdiction over the person, over Mr. Obaid as opposed to jurisdiction over the race? Your Honor, the teaching of Schaefer is that all assertions of jurisdiction, no matter how styled, in personum, quasi, in rem or in rem, require establishment of minimum contacts over the person. So is it your view that the government would have to establish that there were minimum contacts with anybody who comes in to claim any property they want forfeited? No, the government actually overstates our position. The due process-based minimum contact applies to the owner of a property that is being adjudicated. There can be a number of claimants in civil forfeiture cases that are not owners but more in the nature of creditors. The same situation, of course, arises in a bankruptcy court. So the due process only protects the rights of the property owner. So the government argues Tennessee v. Hood implicitly overruled Schaefer because the clear implication is that in rem jurisdiction is still a thing and it wasn't necessary to have a claim against the state that would invoke their sovereign immunity. So what's your response to that? We explain at some length why the government totally misreads Hood to summarize three reasons. First of all, the Supreme Court does not overturn its cases sub salientio. Second reason, in Hood we're talking about a state agency that is not entitled to due process rights. But most importantly, what Hood really stands for is the situation where the bankruptcy court always has jurisdiction over the rest because it has jurisdiction over the owner of the rest. You can only initiate the bankruptcy case where the owner resides, where he is at home. So is there any case that you can point to that has interpreted Schaefer the way you say it should be interpreted, that there specifically in a forfeiture action have to be minimum contacts with someone who claims to be the owner of the property the government seeks to forfeit? Your Honor, first of all, we do not believe contrary to what the government alleges that there's anything special jurisdictionally about civil forfeiture. I would say... Could you answer the question about whether or not there's a case? Well, actually, Your Honor, this circuit has in two instances a $10,000 case and $29,959 case, both of which were civil forfeitures. Both cases paid homage to Schaefer. Well, they paid homage, but at least in the $10,000 case we didn't actually apply it. I'm getting to it, Your Honor. It's a long road. I'm getting to it. What happened, there was a unique posture in the $10,000 case because the rights we're talking about are rights of defendant. The defendant did not raise those, did not make this argument, whereby waiving it and waiver aside, I don't believe conceptually that the government is in a position to vindicate that right. But what's interesting, the government there, as you know, Judge Ikuda, actually was arguing Schaefer. So the reason you did not reach Schaefer was because of unique procedural posture. But to answer your question, Your Honor, yes, in two instances you have affirmed the view that the Schaefer teaching applies in some forfeiture cases. Let me just broaden it a little bit. What's this? In $10,000. The government was arguing that in minimal context. We've lessed it in $10,000. I don't know that we applied it, but... You've not had an opportunity. What about the appellate cases, the other circuits? Yes, thank you for asking, Your Honor. There are at least three excellent appellate cases, including Libuti, the horse case, an interesting name for the horse, out of a second circuit, and two cases out of a fourth circuit, Harrods and Battato, applied four squarely the teaching of Schaefer, established minimum context with Honor, and we are aware of no case, Your Honor, where a contrary position was taken. The government seems to argue, for example, that you need to apply minimum context to the rest, but we think, frankly, it's an idiosyncratic position. The rest does not have any constitutional rights. So it's clearly, I mean, the rest that Schaefer makes abundantly clear. Look, the Schaefer was an important decision, but it also acknowledged that in most circumstances, when the rest, particularly a tangible rest, when it's present in the jurisdiction, you purposefully availed yourself, or if you want to use purposeful direction, or you conducted your activities towards the forum. We do not have the rest. This point was never contested by the government. The only thing we have is the money that's been sent into the jurisdiction, again, at the request of Palantir, and that, of course, under the teaching of Hankler, is not a tribute. Yes, Your Honor. The district court says we should read Schaefer as applying only to quasi-INRAM proceedings, and I understood the government to echo that in its briefing. I'm not sure there's much in Schaefer that supports this, but I'd like to hear what you have to say about it as well. Thank you, Your Honor. Not only there's not much in Schaefer that supports the government's position, but there is actually a perfectly clear language in footnotes, 17 in particular, where the court says several things, where it says that when we use the word INRAM, we're talking about both INRAM and quasi-INRAM. The court begins with an assertion of a general principle, dispensing with a flawed Penoir regime, talking about the fact that legal fiction, that there's something special about the rest, no longer applies in modern circumstances. There's absolutely no evidence to suggest that. But I would also say that the government argues, for example, that it's not a part of a holding of a case. We clearly believe it is part of a holding, but I would point out, and propose some of the questions you asked earlier, it really wouldn't make any difference, because this circuit has several excellent cases, including Levinia and Underwood, that stand for the proposition that the Supreme Court articulates constitutional guidelines. They have to be applied, even in a situation where they're not involved in holding. But we think it clearly involves holding. So Schaefer is 100% for us. The government misconstrues Hood, and there's really very little that we should say about that. I just wanted briefly to mention the venue issue. And, again, we think that the personal jurisdiction, of course, is the most important issue and the one that Judge Fisher is looking for for some guidance. But as far as venue is concerned, I mean, there are three reasons why we prevail. First of all, since the rest is not in the jurisdiction, the only basis for the government's position in venue is 1355B. The teaching of this circuit is that there has to be a proximate cause. Construing the rising under-language of 1355B, it has to be a proximate cause. All of the events occurred overseas. What's even more delicious, there are actually no events at all, even the sending of the money in the jurisdiction that took place in the Central District of California. As we point out in footnote 14 to our brief, yes, sir? Let me ask you about this. No one has cited this, and neither you nor the government nor the district court. So perhaps I'm sure there's a reason for that, and maybe you can explain it. But at ER 157, the forfeiture complaint talks about there were millions of dollars transferred to the red granite capital account at a Los Angeles bank. Why doesn't that count? Although, again, no one has cited that. Your Honor, because the allegation has nothing to do with our client, and the government has not pled anything resembling 12,000 Iqbal, and the government has a burden to bear by establishing jurisdictional facts, so the government has never pled that that had anything to do with our client. The only thing that the government pled regarding our client is the money sent to Palantir. They have pled that that was during the phase, the good start phase of the conspiracy that they've alleged does involve your client. So I'll certainly be asking them why they haven't cited that. But some of your arguments with regard to the meetings and the hotel purchase are that that was irrelevant to the scheme, right? Yes. But with regard to the red capital and the funding of the movies, that doesn't appear to me to be irrelevant to the scheme. So why is it that the sending of the money to the red capital Los Angeles account during the good start phase of the scheme is irrelevant? Your Honor, we feel and argue that the good start phase, even if one assumes it was pled sufficiently relative to our client, and remember the events in Iqbal, the factual narrative involved precisely that a deficient pleading of a conspiracy. So we feel, A, the conspiracy has not been pled even in the good start phase in a way that reaches our client. But more importantly, as far as the money laundering conspiracy is concerned, that is a totally separate type of conspiracy. There's been absolutely no allegation that our client, Mr. Bate, knew anything about what Mr. Lowe was doing relative to his activities in the Norman District, or that Mr. Lowe had any knowledge of what our client was doing relative to Palantir shares. So there's a complete decoupling, complete lack of tailoring, with regard to the money laundering conspiracy. So I hope that answers the question. But to get back to the sending of money by our client at Palantir's request, the government rather acutely says that it was sent to California. We, of course, point out in footnote 14 that if one were to look at the website, you can take judicial notice of it, Silicon Valley Bank has a number of small regional banks. There's only one place you can wire the money, and that's their headquarters. And the headquarters of Silicon Valley Bank, of course, is not in the Norman District. It's in the Norman District of California, not Central District in California. I'd welcome your honors. If you put this question to government, we suspect that they pretty well knew this particular fact. So this one, the only action which, again, is irrelevant for jurisdictional purposes made by our client, did not even touch the Central District of California. And our third argument is that because 1355B is both a long-arm and a venue statute, you cannot construe the same statutory language differently but do different purposes. So it pretty much kills the conspiratorial version of jurisdiction as applied to venue because that would create a problem as far as the personal jurisdiction is concerned. I see that my time is up. Thank you, Your Honors. A minute and 49 seconds for rebuttal. Thank you. May it please the Court. Joshua Sohn for the United States. To address personal jurisdiction first, the personal jurisdiction outcome of this case is controlled by HUD. In HUD, the Supreme Court said that when you are dealing, adjudicating a true interim case, you only need jurisdiction over the property, over the defended property. They never actually said that, right? It was a bankruptcy case. And I thought the clear implication of the case is that it was enough that it was an interim proceeding so the 11th Amendment immunity of the state wasn't triggered. But they never addressed Schaefer. They never mentioned Schaefer. And they certainly never overruled Schaefer. And the HUD itself was a bankruptcy case. And they say, well, bankruptcy and admiralty and proceedings are different. So what do I do with the fact that it was silent on Schaefer and the due process aspect of the personal jurisdiction that was addressed in Schaefer? Let me address those points in turn, Your Honor. First, HUD did expressly say that, quote, jurisdiction over the person is irrelevant if the court has jurisdiction over the property. It also then goes on to say, this is at page 453 of the opinion. It goes on. It's parenthetical there. It's parenthetical. It's clearly adopting. It's clearly adopting the. It doesn't really give me a ringing endorsement that Schaefer is overruled. It goes on to say, Here, however, the bankruptcy court's in rem jurisdiction allows it to adjudicate the debtor's discharge claim without in personam jurisdiction over the state. Over the state. So the other opposing counsel says, well, but there is no due process right in the state or minimum contacts or the like. And that seems to be correct. You don't disagree with that, right? I don't disagree with that. The key point is that the question posed to the Supreme Court was, does the 11th Amendment prohibit the bankruptcy court from exercising jurisdiction over the state? And what the Supreme Court held is, we don't need to decide that question. We don't need to decide whether the 11th Amendment bars an assertion of jurisdiction over the state because you don't need jurisdiction over the state because this is an in rem case. All bankruptcy courts are in rem case. But the point is not about bankruptcy per se. The point was it was an in rem case. So I agree with you. I mean, that is the clear implication of its holding. But it doesn't expressly overrule Schaefer or even address the due process issue. So let me just ask you this. Assuming I don't think that Hood overrules Schaefer, is that the end of your case? Or do you have another argument? No, I would agree with Your Honor that Hood does not overrule Schaefer. Opposing counsel aptly characterized Schaefer's holding, which was, quote, he said it and Schaefer says it, that, quote, assertions of jurisdiction require minimum context. So counsel, your argument is that those cases can be reconciled. Absolutely, Your Honor, because what Schaefer says, again, opposing counsel said it, Schaefer says it, assertions of jurisdiction require minimum context. What Hood says is when you are dealing with an in rem case, you don't need to assert jurisdiction over third parties with an interest in the rest. So you never get to the Schaefer question of what would be required if you did need to assert jurisdiction because you don't need to assert jurisdiction in the first place. So in that respect, Schaefer and Hood are entirely consistent. I'm not understanding you, I guess, because Schaefer was about in rem jurisdiction, which it said included quasi in rem and in rem. And it pronounces the rule that any assertion of jurisdiction including, and the case was about in rem jurisdiction, requires minimum context per international shoe. So how am I misunderstanding that? Because it dealt with assertions of jurisdiction. Now, in Schaefer, there was no dispute you needed to assert jurisdiction over the defendants in the case, the officers and directors of Greyhound Corporation. So the question was, okay, we know we need to assert jurisdiction, how do we do it? Can we simply attach their foreign property or is that insufficient? And, of course, the answer was it's insufficient. So you're confining it to quasi in rem jurisdiction because that was the issue, the immediate issue with the Delaware state rule. Was it Delaware? So we believe the proper holding of Schaefer is that it is directed to quasi in rem, but the court actually does not need to cite that question because even if you were to read Schaefer more broadly to address in rem and quasi in rem. Which is what it said. Well, there's an open question whether when it talks about in rem jurisdiction. It says we use in rem to discuss quasi in rem and in rem, and this is our holding. It covers in rem. So I'm having trouble with that argument. Well, but even if you were to read it to cover both in rem and quasi in rem, it talks about jurisdiction over the defendant. The word defendant happens over and over and over again in Schaefer. So even if you were to read it as broadly as possible, for an in rem case, you would need to assert jurisdiction, according to the broadest reading of Schaefer, over the defendant, which is the property. And so Schaefer says always have to have because the ruling is about the owner of the property, not the property itself. That's what Schaefer says. That the person has the rights, not the property. So that's why they said because it's the person who has the interest, we need to have jurisdiction over the person. Because it's the person who is being hailed into court, it's the person who is the defendant, and it's the person who you need to assert jurisdiction over. But, again, what Hood says is when you have an in rem case, you don't need to assert jurisdiction over third parties with an interest in the rest. You only need to assert jurisdiction over the rest itself. Obeyed has never challenged, or excuse me, he has never properly challenged jurisdiction over the Palantino shares. He, of course, tried to belatedly in his reply brief below. The district court held it was waived. He hasn't challenged that waiver holding. So as a matter of law, given the procedural posture before this court, there is no dispute. There is jurisdiction. So your view that Schaefer said, but in in rem jurisdiction, when you assert jurisdiction over the property, there is no need to have jurisdiction over the person. You would say that's a fair reading of Schaefer. If you have jurisdiction over the property in a true in rem case, then certainly that's what Hood said, and I believe. But you think that's a fair reading of Schaefer to say, therefore, there is no jurisdiction needed over the person. There is jurisdiction needed over the defendant. Schaefer is laser focused on having jurisdiction over the defendant. But your view at a fair reading of Schaefer is that if a court has jurisdiction over the rem, there is no need to have personal jurisdiction over the owner of the rem. Is that correct? Is that what you're saying is the reading of Schaefer? Yes, Your Honor. And that is confirmed by Hood because Hood makes clear that if you have jurisdiction. Did Hood address Schaefer? I thought Hood did not address Schaefer. No, Hood didn't address Schaefer because, again, Schaefer was about what is required to assert jurisdiction. And Hood makes clear that in an in rem case, you do not need to assert jurisdiction over the owner of the property, over people with an interest in the property. And that's why the 11th Amendment question didn't need to be addressed. In fact, Justice Scalia in his dissent in Hood sort of castigated the court for ducking the 11th Amendment issue. But the court majority said we don't need to address that. We don't need to address whether there is an 11th Amendment bar to asserting jurisdiction over the state because we do not need to assert jurisdiction over the state. An in rem case only requires jurisdiction over the property. And frankly, Your Honor, this court in the 1.67 million opinion adopted that view or at least ruled entirely consistent with that view. And 1.67 million was an in rem civil forfeiture case. And this court held that jurisdiction, in rem jurisdiction, was perfected by satisfying the Section 1355B test as to the rest. There was absolutely no discussion of whether there were minimum contacts with the owner of the rest. In fact, there was no discussion of whether there were minimum contacts with the rest itself in the constitutional sense. What allowed for in rem jurisdiction was satisfying Section 1355. So certainly as a matter of panel precedent, we believe that case is controlling even if Hood were otherwise not controlling, which it is. If I could move to the venue questions, I know my time is short unless there are further questions on personal jurisdiction. So on venue, it's important to know that this court is not writing on a blank slate. The cases have universally held, unanimously held, that when a defendant rests his proceeds of a conspiracy, venue is proper in any district where any act in furtherance of the conspiracy took place. I think one case of the many cases we string-sided is worthy of lingering on just a moment, and that is again 1.67 million. Because the facts of 1.67 million are really dispositive. In that case, you had a marijuana smuggling conspiracy that lasted from 1979 through at least the entire 1980s. The court discusses how for one of those shipments, the 1987 shipments, there were overt acts in the Northern District of California. No indication there were any Northern District acts in any of the other shipments, just that one 1987 shipment. The conspiracy eventually spun out $1.67 million sitting in a Cayman Islands bank account. And this court held that venue was proper, and the case was properly brought in the Northern District of California, and it says why at page 998. It says, quote, the government sufficiently demonstrated that Hartog's marijuana smuggling enterprise, which gave rise to the forfeiture action, had significant interactions with the Northern District. What was the overt action that happened in Central District of California? So there were several actions. In the Goodstar phase itself, there were hundreds of millions of dollars laundered into the Central District to purchase the L'Hermitage Hotel, to purchase other luxury real estate. Then in other later phases of the conspiracy, there were other overt acts. We discuss in our brief that there was a fraudulent email sent to BSI Bank from Los Angeles, which was really the key to unlocking $1.4 billion in stolen proceeds. Judge Bennett, I think, referred to sending money to Red Granite. That was, as a matter of fact, in the A-bar. We believe that was in the A-bar BVI phase of the conspiracy. Although it says that some of the money was wired, I think, in 2011. You know, I'd have to look. Excuse me, Alex. I'm looking at ER 231. If the money was wired in 2011? In paragraph 563 of the complaint. Yes, Your Honor is correct. Red Granite was primarily in the A-bar BVI phase activity, but it does appear that there was some Central District. Not citing it was an omission, not deliberate. Well, that's correct, but in the A-bar BVI phase, we already cite a Los Angeles email that was a key to unlocking $1.4 billion in assets. So any further Los Angeles actions in that phase? Their claim, though, is that there are really four conspiracies here, and that we can't look at this as one, right? Well, they say, the Amici say that a little bit more sharply, but that's simply not plausible, particularly on a motion to dismiss. We allege that this was waves of successive attacks on the 1MDB Sovereign Wealth Fund using very similar methodologies, sham joint ventures, sham bank accounts, funneling money into these bank accounts and then raiding it. You have the same actors. But your position is, even if that's right with regard to this race, it doesn't matter? Well, it is critical that it is a single conspiracy. Our position is that fruits of a conspiracy are properly venued before any act in furtherance of the conspiracy takes place. Now, implicit in that position is the fact that this is the same conspiracy, but there is copious evidence from the overlapping methodologies to the overlapping people to the fact that some of the money in later phases was used to cover up shortfall in the earlier phases. This was one conspiracy done in multiple phases. And I know my time is running short, Your Honor, so a few points on venue I would like to make clear is that in interpreting 1355B, giving rise to the forfeiture language, it's very relevant, in fact nearly dispositive, to look at other portions of the forfeiture statutes using exactly that same phrase, giving rise to the forfeiture. And, of course, you can look to the relation back statutes, 18 U.S.C. 981F and 21 U.S.C. 853C, exact same language. And what do they hold? They hold that the relation back statutes are triggered as soon as the first act of the conspiracy occurs. So you don't look to see whether there is a direct tracing. There's no further analysis required. As soon as the conspiracy starts, the relation back is triggered and title vests in the government. So, therefore, giving rise to the forfeiture in 1355B should also have the same rule. As soon as any acts giving rise to the forfeiture, excuse me, any acts in furtherance of the conspiracy give rise to the forfeiture because that's the only way you can harmonize the same language across the multiple statutes. Finally, Your Honor, my final few seconds, look to prosecutions of criminal conspiracies. They can be venued wherever any act in furtherance of the conspiracy took place, no matter which conspirator committed the act. So civil forfeiture proceeds of a criminal conspiracy should also be allowed to be venued wherever any act in furtherance of the conspiracy took place. It makes zero sense to have a more restrictive rule for civil forfeiture proceeds of a conspiracy than you have for prosecutions, particularly since prosecution venue is subject to Sixth Amendment constraints and civil forfeiture venue has no such constraints.  Thank you, counsel. Your Honor. Thank you, Your Honors. Thank you, Your Honors. If I can just run through things very, very briefly. The government fundamentally misunderstood its hood. Let me emphasize the hood court made clear, but the court's jurisdiction was predicated on the jurisdiction of a debtor and his estate. As you may recall, I said that creditors are not entitled to the same rights and the state entity was a creditor. It was not an owner. I would also like to point out the absurd consequences under the government's reading of the law. If you have arrests, due process will not apply entirely. Again, there's nothing constitutionally unique about civil forfeiture, so you would not be entitled to notice because due process is a lot more than establishes minimum jurisdiction. This is worse than the Penoia world. One of the reasons it's particularly worse than the Penoia world, at least in the Penoia presence equal control. The rest is not here. Let me also briefly point out that $1.67 million case was a pure statutory case. The court talked about jurisdiction. It talked about long-arm jurisdiction. Let me also point out that if you look at the Cabrales case in the Second Circuit, the criminal conspiracy are governed entirely by different jurisdictional rules because of the Sixth Amendment, et cetera, et cetera. Let me also point out that the conspiracy theory of personal jurisdiction is utterly rejected, post-Danson, particularly post-Walden. The government does not seem to recognize that, and if given the way 1355 works, if you read it to reach a conspiratorial theory of venue, you would have to do the same thing for PGA purposes, and you would need to avoid it on constitutional grounds. Let me again point out the government does not even try to plead, even if conspiracy theory of jurisdiction applied. The government does not even try to plead anything pertaining to our client. Thank you. Thank you, Your Honors. Thank you to both counsel. The case just argued is submitted for a decision by the court.
judges: Rawlinson, Ikuta, Bennett